UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID LUBINSKI, RYAN R. KENNY, MICHAEL A. CORNALE, ANTHONY SANTIAGO, DIEGO D. DIAS and SEAN MORELLI, individually and on behalf of all other persons similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>JOHNSON CONTROLS, INC.,<br><br>                Defendant. | ECF CASE<br><br>No.: _____<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs David Lubinski, Ryan R. Kenny, Michael A. Cornale, Anthony Santiago, Diego D. Dias and Sean Morelli ("Plaintiffs"), by their attorneys, Lipsky Lowe LLP, on behalf of themselves and all others similarly situated, allege as follows:

PRELIMINARY STATEMENT

1.      Plaintiffs work for Johnson Controls Inc. ("Johnson Controls") as steamfitters and plumbers in its HVAC Division, performing work on private and public job sites throughout New York State, including New York City.

2.      Plaintiffs allege, on behalf of themselves and other similarly situated current and former employees, that Johnson Controls entered into contracts with public entities, including New York City Department of Health and Mental Hygiene, New York City Health and Hospitals Corporation, City University of New York, New York City Department of Education, New York State Office of Mental Health, New York State Executive Department and New York State Department of Transportation (collectively, "Prevailing Wage Contracts"), and that they were entitled to be paid prevailing wages and supplemental benefits for the work they performed

1

pursuant to these contracts.

3.    Plaintiffs allege, on behalf of themselves and other similarly situated current and former employees, that Johnson Controls paid them an hourly rate that was below the required prevailing wage rates, failed to pay them their daily and weekly overtime at the applicable prevailing wage rates and failed to pay them the supplemental benefits when they performed work on public job site, including on Rockland Psychiatric Center, Bronx Psychiatric Center, Cook Chill Production Center, Nathan Kline Psychiatric Institute, Mid-Hudson Forensic Psychiatric Center, Middletown Psychiatric Center, Manhattan Psychiatric Center, Richard C. Ward Addition Treatment Center, Middletown New York State Troopers Troop F, The State University of New York, The City University of New York, Lehman College, Rockland Community College, Bronx River House,  South Bronx Job Corps Center, HHC Hospitals and Facilities, including Lincoln Hospital, Jacobi Medical Center, United States Military Academy West Point and its affiliated government facilities, Westchester County buildings and facilities, including court houses, Westchester Country Center, Richard C. Ward Addiction Treatment Center, Kirby Forensic Psychiatric Center, the Manhattan Psychiatric Center and New York State Psychiatric Institute.

4.    Plaintiffs assert, on behalf of themselves and other similarly situated current and former employees, as third-party beneficiaries of Johnson Controls' Prevailing Wage Contracts, claims against it for unpaid prevailing wages, unpaid daily and weekly overtime and supplemental benefits to which they were statutorily and contractually entitled to, pursuant to Labor Law § 220, for qualified prevailing wage work performed on various publicly financed job sites for the New York City and the State of New York.

5.    Plaintiffs assert, on behalf of themselves and other similarly situated current and former employees, claims Johnson Controls for violating the Labor Law by (i) failing to pay their

2

regular rate of pay for all hours worked (ii) failing to pay overtime premium pay, (iii) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1, and (iv) failing to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

6.    Plaintiffs asserts, on behalf of themselves and other similarly situated current and former employees, against Johnson Controls claims for failing to pay them overtime, violating the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq.* ("FLSA").

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' FLSA claims under 29 U.S.C. § 216(b).

8.    Venue is proper in this District under 28 U.S.C. §§1391(b)(1), 1391(b)(2): Johnson Controls is a resident of this District, as it conducts business in this District to a sufficient degree to be considered a resident of this District pursuant to 28 U.S.C. § 1391(d); and a substantial part of the events giving rise to the action occurred in this District.

9.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

10.    Plaintiff Lubinski was and is, at all relevant times, an adult individual, residing in Orange County, New York.

11.    Plaintiff Kenny was and is, at all relevant times, an adult individual, residing in Orange County, New York.

12.    Plaintiff Cornale was and is, at all relevant times, an adult individual, residing in Ridgefield, Connecticut.

13.    Plaintiff Santiago was and is, at all relevant times, an adult individual, residing in Orange County, New York.

14.    Plaintiff Dias was and is, at all relevant times, an adult individual, residing in Fairfield, Connecticut.

15.    Plaintiff Morelli was and is, at all relevant times, an adult individual, residing in Bloomfield, New Jersey.

16.    Defendant Johnson Controls Inc. is a foreign business corporation, organized and existing under Wisconsin law, and is authorized to do business in the State of New York, with its principal place of business at 229 West 28th Street, New York, New York, 10001.

17.    Johnson Controls is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce. Johnson Controls is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00. These goods and services include heavy machinery, construction tools, pipes, HVAC parts, locks and other construction and electronic security equipment.

18.    At all relevant times, Johnson Controls employed Plaintiffs within the meaning of the FLSA and the Labor Law.

19.    At all relevant times, Plaintiffs were laborers, workers, steamfitters and plumbers within the meaning of NYLL § 220.

FACTUAL ALLEGATIONS

20.    Johnson Controls is part of an American Irish-domiciled multinational conglomerate headquartered in Cork, Ireland, which offers and produces the world's largest portfolio of building technology, software and services, including, in relevant part, HVAC, fire and security equipment and services for public and private, residential and commercial facilities and buildings. As of 2022, the conglomerate employed 102,000 people across 150 countries.

21.    Johnson Controls is a wholly owned subsidiary of Johnson Controls International PLC, a publicly traded company listed on the NYSE (Symbol: JCI) and, upon information and belief, has over $30 billion in revenue.

Plaintiffs' Duties and Counties

22.    At all relevant times, Plaintiffs worked out of Johnson Controls' Westchester County Office.

23.    At all relevant times, Plaintiffs Lubinski, Kenny and Morelli were part of Local 638

24.    At all relevant times, Plaintiffs Cornale, Dias, Santiago were part of Local 21.

25.    Plaintiffs worked out of Johnson Controls' Westchester County Office.

26.    During all relevant times, Plaintiffs performed steamfitter and plumber work, such as maintaining and repairing boilers, maintaining and repairing chillers, and performing piping repairs on private and public job sites in New York City and various New York State Counties, including Bronx, Orange, Rockland, Sullivan, Ulster, Westchester, Putnam, and Dutchess.

Plaintiff's Dates of Employment

27.    Plaintiffs are Johnson Controls' current employees and former employees who are well trained and experienced steamfitters. They have worked for the company for many years.

<u>Lubinski</u>

28.     Plaintiff Lubinski has worked for Johnson Controls from July 16, 2013 to present.

<u>Kenny</u>

29.     Plaintiff Kenny has worked for Johnson Controls from March 2006 to present.

<u>Cornale</u>

30.     Plaintiff Cornale has worked for Johnson Controls from January 3, 2006 to present.

<u>Santiago</u>

31.     Plaintiff Santiago has worked for Johnson Controls from 2015 to present.

<u>Dias</u>

32.     Plaintiff Dias has worked for Johnson Controls from March 13, 2018 to present.

33.     From March 2018 to approximately end of 2018, Plaintiff Dias worked as an apprentice and, from the end of 2018 to present, he works as journeymen.

<u>Morelli</u>

34.     Plaintiff Morelli has worked for Johnson Controls from March 25, 2013 to November 16, 2022.

<u>Public Job Sites</u>

35.     During all relevant times, Plaintiffs performed prevailing wage work at numerous public job sites, including the Rockland Psychiatric Center, Bronx Psychiatric Center, Cook Chill Production Center, Nathan Kline Psychiatric Institute, Mid-Hudson Forensic Psychiatric Center, Middletown Psychiatric Center, Manhattan Psychiatric Center, ATC Middletown New York, HHC Hospitals and Facilities, including Lincoln Hospital, Jacobi Medical Center, United States Military Academy West Point and its affiliated government facilities, Westchester County buildings and facilities, including the court houses, Westchester Country Center, and the Richard C. Ward

6

Addiction Treatment Center.

36.     During their employment, Plaintiffs' assigned job sites vary and varied from week to week.  Accordingly, during each week of their employment, they may work on multiple private job sites, public job sites or both.

Hours Worked

37.     At all relevant times during their employment, Plaintiffs generally worked for 5 days a week, working Monday to Friday.

38.     Plaintiffs' regular schedule was generally from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, working 8 hours per day and 40 hours per week.

39.     However, Plaintiffs and their coworkers often worked late on both the public and private job sites, regularly working over 40 hours per week.

40.     During their employment, Plaintiffs had to regularly work late because they had to respond to incoming service calls and emergencies. Moreover, Johnson Controls also sometimes scheduled extra shifts for them for pre-planned work that had to take place in the evenings, overnight or on Saturdays, on as needed basis, further extending their hours worked beyond 40 per week.

41.     During their employment, Johnson Controls scheduled Plaintiffs to work on call weeks 8 to 15 weeks per year.

42.     During the on call weeks, Plaintiffs were on call from 7:00 a.m., on Tuesday one week, to 7:00 a.m., on Tuesday the following week and were responsible to take any incoming service calls.

43.     During on call weeks, depending on the service call volume, Plaintiffs usually worked anywhere from 2 to 47 hours beyond their normal scheduled hours, further increasing their

overtime hours beyond 40.

Lubinski

44.    At all relevant times, Plaintiff Lubinski works 5 days per week, usually working Monday to Friday.

45.    At all relevant times, Plaintiff Lubinski generally works from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, working 8 hours per day and 40 hours per week.

46.    During his employment, Plaintiff Lubinski's schedule varies based on Johnson Controls' needs and emergencies and, as such, he often works late, working between 2 to 15 hours per week beyond his scheduled shifts, resulting in him working an average of 48.5 hours per week. He estimates that he works overtime hours at least 2 weeks per month.

47.    During the weeks when Plaintiff Lubinski was on call, he worked between 4 to 47 hours beyond his normal schedule, bringing his total hours worked to an average of 65.5 per week.

48.    Plaintiff Lubinski worked and works at least 8 to 10 on call weeks per year.

Kenny

49.    At all relevant times, Plaintiff Kenny works 5 days per week, usually working Monday to Friday.

50.    At all relevant times, Plaintiff Kenny is generally scheduled to work from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, working 8 hours per day and 40 hours per week.

51.    During his employment, Plaintiff Kenny regularly works beyond his normal schedule due to service and emergency calls. As a result, he is often required to work late, working an average of 2 extra hours and a total of 42 hours per week. He estimates that he works overtime hours at least 2 weeks per month.

52.    Johnson Controls often schedules Plaintiff Kenny and his coworkers to work on

scheduled projects in the evenings, overnight or on Saturdays, resulting in them working over 40 hours per week. For instance, on February 21 and 23, 2023, after finishing their normal shifts at 3:30 p.m., Plaintiffs Kenny and Cornale worked from 5:00 p.m. to 4:00 a.m. and from 5:00 p.m. to 5:30 a.m., working an extra 11-hour and 12-hour shift, respectively, on a scheduled job at Sloan Kettering Hospital in Westchester.

53.    During the weeks when Plaintiff Kenny is on call, he works an average of 10 on call hours per week, bringing his hours worked to at least 65 per week.

54.    Plaintiff Kenny works at least 5 on call weeks per year.

Cornale

55.    At all relevant times, Plaintiff Cornale works 5 days per week, usually working Monday to Friday.

56.    At all relevant times, Plaintiff Cornale is generally scheduled to work from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, working 8 hours per day and 40 hours per week.

57.    During his employment, Plaintiff Cornale's schedule varied based on Johnson Controls' needs and, as such, he worked between 2 to 15 hours per week beyond his scheduled shifts, resulting in him working at least 42 to 55 hours per week. He estimates that he works these overtime hours at least 2 weeks per month.

58.    During the weeks when he is on call, Plaintiff Cornale works at least 4 to 40 on call hours, bringing his total hours worked to an average of 62 hours.

59.    Plaintiff Cornale works at least 8 to 10 on call weeks per year.

Santiago

60.    At all relevant times, Plaintiff Santiago worked 5 days per week, usually working Monday to Friday.

61.    At all relevant times, Plaintiff Santiago is generally scheduled to work from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, working 8 hours per day and 40 hours per week.

62.    During his employment, Plaintiff Santiago's schedule varied based on Johnson Controls' needs and, as a result, he works beyond 40 hours per week at least 2 weeks per month.

63.    Plaintiff Santiago regularly works late, working 1 to 2 extra hours per week, and sometimes picking up one or more 8-hour extra shifts per week, resulting in him working at least 42 to 60 hours per week.

64.    During Plaintiff Santiago's on call weeks, he works at least 4 to 30 hours extra per week, bringing his total hours worked to an average of 57 per week.

65.    From 2017 to 2022, Plaintiff Santiago worked on average 6 on call weeks per year.

Dias

66.    At all relevant times, Plaintiff Dias generally works 5 days per week, usually working Monday to Friday.

67.    At all relevant times, Plaintiff Dias was generally scheduled works from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, working 8 hours per day and 40 hours per week.

68.    During winter and summer months, Plaintiff Dias's schedule varies based on Johnson Controls' needs and emergencies and, as a result, he works 5 to 10 hours per week beyond his scheduled shifts, resulting in him working at least 45 hours per week. Plaintiff Dias worked this way, approximately 8 weeks out of the year. He estimates that he works overtime hours at least 2 weeks per month.

69.    During the weeks when Plaintiff Dias is on call, he generally works at least 5 to 20 hours extra per week, bringing his hours worked to an average of 52.5 hours per week.

70.    In 2021 or 2022, Plaintiff Dias worked 19 weeks on call. During the rest of his

10

employment, he generally works at least 8 to 10 weeks on call per year.

<u>Morelli</u>

71.    At all relevant times, Plaintiff Morelli worked 5 days per week, usually working Monday to Friday.

72.    At all relevant times, Plaintiff Morelli worked from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, working 8 hours per day and 40 hours per week.

73.    During his employment, from around May through September, Plaintiff Morelli often worked beyond his normal scheduled hours, due to incoming service and emergency repair calls, including for broken AC units. As a result, he regularly worked at least 6 extra hours and a total of 46 hours per week. He estimates that he worked overtime hours at least 2 weeks per month.

74.    During Plaintiff Morelli's on call weeks, he worked at least 12 to 45 hours extra per week, bringing his total hours worked to at least 52 per week.

75.    Plaintiff Morelli was on call at least 8 weeks per year.

<u>Compensation</u>

76.    The wages paid to Plaintiffs during their employment and, upon information and belief, up to mid-2021, were far below what they were entitled to under the New York City and New York State Prevailing Wage Contracts.

<u>Lubinski</u>

77.    Upon information and belief, from 2017 to 2018, Johnson Controls paid Plaintiff Lubinski between $40.50 to $41.50 per hour.

78.    In or around 2019, Johnson Controls paid Plaintiff Lubinski between $41.50 to $42.60 per hour.

79.    In or around 2020, Johnson Controls paid Plaintiff Lubinski $42.60 per hour and,

later in the year, $42.85 per hour.

80.    In or around 2021, Johnson Controls paid Plaintiff Lubinski $42.85 per hour.

81.    In or around 2022, Johnson Controls paid Plaintiff Lubinski $43.60 per hour.

<u>Kenny</u>

82.    In or around 2017, Johnson Controls paid Plaintiff Kenny $40.50 per hour.

83.    In or around 2018, Johnson Controls paid Plaintiff Kenny $41.50 per hour.

84.    In or around 2019, Johnson Controls paid Plaintiff Kenny between $41.50 to $42.60 per hour.

85.    In or around 2020, Johnson Controls paid Plaintiff Kenny $42.60 per hour and later in the year $42.85 per hour.

86.    In or around 2021, Johnson Controls paid Plaintiff Kenny $42.85 per hour.

87.    In or around 2022, Johnson Controls paid Plaintiff Kenny $43.60 per hour.

<u>Cornale</u>

88.    In relevant part, upon information and belief, from March 2016 to April 30, 2017, Johnson Controls paid Plaintiff Cornale $38.78 per hour.

89.    From May 1, 2017 to April 30, 2018, upon information and belief, Johnson Controls paid Plaintiff Cornale $39.18 per hour.

90.    From May 1, 2018 to April 30, 2019, upon information and belief, Johnson Controls paid Plaintiff Cornale $41.18 per hour.

91.    From May 1, 2010 to April 30, 2020, upon information and belief, Johnson Controls paid Plaintiff Cornale $41.68 per hour.

92.    From May 1, 2020 to April 30, 2021, upon information and belief, Johnson Controls paid Plaintiff Cornale $42.68 per hour.

93.     From May 1, 2021 to April 30, 2022, upon information and belief, Johnson Controls paid Plaintiff Cornale $40.68 per hour.

94.     From May 1, 2022 to present, upon information and belief, Johnson Controls paid Plaintiff Cornale $41.68 per hour.

Santiago

95.     In or around 2017, Johnson Controls paid Plaintiff Santiago $36.79 per hour and later in the year it went up to $37.54 per hour.

96.     In or around 2018, Johnson Controls paid Plaintiff Cornale $38.94 per hour.

97.     In or around 2019, Johnson Controls paid Plaintiff Santiago between $38.94 and $40.44 per hour.

98.     In or around 2020, Johnson Controls paid Plaintiff Santiago $40.44 per hour.

99.     In or around 2021, Johnson Controls paid Plaintiff Santiago $41.40 per hour.

100.    In or around 2022, Johnson Controls paid Plaintiff Santiago $42.44 per hour.

Dias

101.    In or around 2018, Johnson Controls paid Plaintiff Dias $34.56 per hour.

102.    In or around 2019, Johnson Controls paid Plaintiff Dias $38.68 per hour.

103.    In or around 2020, Johnson Controls paid Plaintiff Dias $39.68per hour.

104.    In or around 2021, Johnson Controls paid Plaintiff Dias $40.68 per hour.

105.    From start to approximately December 2022, Johnson Controls paid Plaintiff Dias $41.68 per hour.

106.    From December 2022 to present, Johnson Controls paid Plaintiff Dias $44.68 per hour.

Morelli

107.    In or around 2017 and 2018, Johnson Controls paid Plaintiff Cornale approximately $38.00 per hour.

108.    In or around 2019, Johnson Controls paid Plaintiff Cornale approximately $42.00 per hour.

109.    In or around 2020 to 2022, Johnson Controls paid Plaintiff Cornale approximately $43.85 per hour.

Johnson Controls' Failure to Pay Prevailing Wages

110.    From the start of Plaintiff's employment and until at least mid-2021, Johnson Controls paid them the same hourly rates when they worked on private jobs and on public job sites, failing to pay them all the prevailing wages and supplemental benefits that they were entitled to when they worked on public job sites.

111.    For instance, according to New York State Department of Labor's Prevailing Rate Schedule, from July 1, 2019 to December 31, 2019, for work performed as "Steamfitter[s]" on New York State public job sites located in New York City, Plaintiffs and other similarly situated employees, were entitled to be paid the prevailing wage of $64.56, and, from January 1, 2020 through June 2020,$65.01 per hour; and, from July 1, 2019 through June of 2020, for work performed as "Plumber & Steamfitter[s]" on public job sites located in Dutchess County,  they were entitled to be paid the prevailing wage of $51.58.

112.    For instance, according to New York City Office of The Comptroller's Construction Worker Prevailing Wage Schedule, from July 1, 2020 to January 24, 2021, for work performed as "Steamfitter[s]" on New York City public job sites, Plaintiffs and other similarly situated employees, were entitled to be paid the prevailing wage of $57.95, and, from January 25,

2021 through June 30, 2021, $59.05 per hour.

113.    From 2017 and until at least mid-2021, despite working on multiple public job sites, Johnson Controls never paid Plaintiffs all their applicable prevailing wages that they were entitled to.

114.    From 2017 and until at least mid-2021, Plaintiffs and other similarly situated employees who worked as Steamfitters and Plumbers never received the applicable rates of pay as was required by the prevailing wages schedules.

Unpaid Prevailing Wage Daily and Weekly Overtime

115.    During all relevant times, Plaintiffs frequently worked more than 7 hours per day and more than 40 hours in a workweek, but Johnson Controls failed to pay them at the appropriate daily and weekly prevailing wage overtime rates.

116.    Johnson Controls failed to pay Plaintiffs 1.5 times their lawful regular rate of pay, for the hours worked above 7 per day or 40 per week when they worked on a public job sites.

117.    Instead of paying Plaintiffs their overtime at prevailing wage rates, Johnson Controls paid them their overtime at 1.5 times their union rates of pay, which were significantly lower than what was required to be paid on the public work job sites.

Failure to Pay Supplemental Benefits

118.    When Plaintiffs worked on public job sites, Johnson Controls failed to pay them all the applicable prevailing wage supplemental benefits, instead, upon information and belief, paying them only the lower union benefits rates.

119.    For instance, according to New York State Department of Labor's Prevailing Rate Schedule, from July 1, 2019 through June of 2020, for work performed as Steamfitters on New York State public job sites located in New York City, Plaintiffs and other similarly situated

15

employees, were entitled to be paid the supplemental benefits of $50.43 per hour; and, from July 1, 2019 through June of 2020, for work performed as Plumbers on public job sites located in Dutchess County, they were entitled to be paid the supplemental benefits of $36.58 per hour.

120.    For instance, according to New York City Office of The Comptroller's Construction Worker Prevailing Wage Schedule, from July 1, 2019 to January 12, 2020, for work performed as "Steamfitter[s]" on New York City public job sites, Plaintiffs and other similarly situated employees, were entitled to be paid the supplemental benefits of $57.29 per hour, and, from January 13, 2020 through June 30, 2020, $57.84 per hour.

121.    From July of 2019 through June of 2020, Plaintiffs who worked as Steamfitters and Plumbers, in the relevant counties, were never paid $112 per hour or $93 per hour, which were the total compensation (i.e. prevailing wage and the supplemental benefit rate) that Johnson Controls was required to pay them for their steamfitting work at any of above identified public job sites. Instead, they were paid far below these requirements.

122.    Plaintiffs allege, on behalf of themselves and other similarly situated current and former employees, that Johnson Controls failed to pay them the total amount of supplemental benefits and prevailing wages, including failure to pay their overtime hours at the applicable prevailing wage rates, to which they were contractually and statutorily entitled to, pursuant to New York Labor Law ("Labor Law") § 220, for prevailing wage work performed in several qualified positions, including as Plumber and Steamfitter on publicly financed and government owned job sites in New York City and in several New York State counties, including Manhattan, Bronx, Orange, Rockland, Sullivan, Ulster, Westchester, Putnam and Dutchess.

123.    Johnson Control's unlawful conduct as herein described has been widespread, repeated and consistent.

16

124.    Johnson Controls failed to post and/or keep posted at their place of business or office a notice explaining employees' rights under the Labor Law and FLSA.

## CLASS ACTION ALLEGATIONS

125.    Plaintiffs assert these allegations and claims on their own and on behalf of two classes of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> All persons whom Johnson Controls employs and has employed who were steamfitters and plumbers and other substantially similar positions at any time since April 4, 2017 to the entry of judgment in this case, who were non-exempt employees within the meaning of the New York Labor Law ("Class Members").

126.    The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within Johnson Controls' sole control, upon information and belief, more than 100 Class Members exist.

127.    Plaintiffs' claims are typical of the Class Members', and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

128.    Johnson Controls has acted or refused to act on grounds generally applicable to the Class Members, making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members.

129.    Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in employment law, wage and hour law, prevailing wages law and class action litigation.

130.    Plaintiffs have the same interest in this matter as all other Class Members and their

claims are typical of Class Members'.

131.    Common questions of law and fact exist as to the Class Members that predominate over any questions solely affecting the individual Class Members, including but not limited to:

a.    whether Johnson Controls employed Plaintiffs and the Class Members, individually or jointly, within the meaning of the Labor Law;

b.    whether Johnson Controls failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.    what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.    whether Johnson Controls failed or refused to pay the Class Members overtime premium pay at their regular rate of pay, including at prevailing wage rates of pay, for all hours worked in excess of 40 hours per workweek;

e.    whether Johnson Controls failed to provide the Class Members with wage notices and wages statements under Labor Law §§ 195.1 and 195.3;

f.    whether Johnson Controls failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided under the Labor Law in any area where Plaintiffs and the Class Members are employed;

g.    whether Johnson Controls is liable for all damages claimed hereunder, including but not limited to, interest, costs and disbursements and attorneys' fees; and

h.    whether Johnson Controls should be enjoined from such violations of the Labor Law in the future.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

132.    Under 29 U.S.C. § 206, Plaintiffs seek to assert these allegations and claims as a

collective action:

> All persons whom Johnson Controls employs and has employed who were steamfitters and plumbers and other substantially similar positions at anytime since April 4, 2020 to the entry of judgment in this case, who were non-exempt employees within the meaning of the FLSA (the "Collective Action Members") and who were not paid overtime premium pay, for all hours worked and were subject to unlawful deductions under the FLSA.

133.    Plaintiffs and the Collective Action Members are similarly situated on several legal and factual issues, including:

a.    whether Johnson Controls employed the Plaintiffs and Collective Action Members within the meaning of the FLSA;

b.    whether the Plaintiffs and Collective Action Members performed similar duties;

c.    Whether Johnson Controls failed to pay the Collective Action Members overtime compensation for hours worked in excess of 40 hours per workweek at the applicable prevailing wage rates, violating the FLSA and the regulations promulgated thereunder;

d.    whether Johnson Controls willfully or recklessly violated the FLSA; and

e.    whether Johnson Controls failed to pay the Plaintiffs and Collective Action Members overtime compensation for hours worked in excess of 40 hours per workweek, violating the FLSA and the regulations promulgated thereunder.

f.    The statute of limitations should be estopped or equitably tolled due to Johnson Controls' statutory violations.

FIRST CAUSE OF ACTION
FAILURE TO PAY OVERTIME PREMIUM PAY
UNDER THE FLSA
(On Behalf of Plaintiffs the Collective Action Members)

134.    Plaintiffs repeat and reallege every allegation of the preceding paragraphs as if set forth fully herein.

135.    Plaintiffs consent in writing to be a party to this action under 29 U.S.C. §216(b), through their undersigned Counsel.

136.    Johnson Controls employed, and/or continue to employ, Plaintiffs and the Collective Action Members within the meaning of the FLSA.

137.    Johnson Controls was required to pay Plaintiffs and the Collective Action Members no less than 1.5 times the regular rate at which they were paid for all hours worked in excess of 40 hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

138.    At all relevant times, Johnson Controls had a policy and practice of refusing to pay all overtime compensation due to their employees for all their hours worked in excess of 40 hours per workweek.

139.    Johnson Controls was aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

140.    Because Johnson Controls' violations of the FLSA have been willful, a three-year statute of limitations applies under 29 U.S.C. § 255 and should be equitably tolled between the filing of this lawsuit and when the Court conditionally certifies the collective action.

141.    Johnson Controls has not made a good faith effort to comply with the FLSA with respect to Plaintiffs and the Collective Action Members' compensation.

142.    In failing to compensate Plaintiffs and the Collective Action Members for all

compensable hours worked, Johnson Controls violated the FLSA and the regulations thereunder, including 29 C.F.R. §§ 785.13, 785.11.

SECOND CAUSE OF ACTION
FAILURE TO PAY THE OVERTIME PREMIUM PAY
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiff and the Class Members against Johnson Controls)

143.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

144.    The unpaid wages at issue in this claim are "wages" under N.Y. Lab. Law § 190(1).

145.    Under the Labor Law and supporting New York Statement Department of Labor Regulations, Johnson Controls was required to pay Plaintiff and the Class Members 1.5 times their regular rate of pay for all hours worked in excess of 40 per workweek.

146.    Johnson Controls failed to pay Plaintiff and the Class Members wages for all hours worked, including the overtime wages to which they were entitled, violating N.Y. Lab Law § 650 and Part 142, § 142-2.2 of Title 12 of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act.

147.    Johnson Controls willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiff and the Class Members the correct amount of overtime wages.

148.    Due to Johnson Controls' Labor Law violations, Plaintiff and the Class members are entitled to recover from it their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

THIRD CAUSE OF ACTION
FAILURE TO PROVIDE 195.3 WAGE STATEMENT
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Members against Johnson Controls)

149.    Plaintiffs realleges every preceding allegation as if set forth fully herein.

150.    Johnson Controls has willfully failed to supply Plaintiffs and the Class Members with the required statement with every payment of wages, violating Labor Law § 195.3.

151.    Due to Johnson Controls' violations of N.Y. Lab Law § 195.3, Plaintiffs and the Class Members are entitled to recover from it $250.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab Law § 198(1)-d (2016).

FOURTH CAUSE OF ACTION
FAILURE TO PROVIDE 195.1 NOTICE
UNDER THE NEW YORK LABOR LAW
(On Behalf of Plaintiffs and the Class Members against Johnson Controls)

152.    Plaintiffs realleges every preceding allegation as if set forth fully herein.

153.    Johnson Controls has willfully failed to supply Plaintiff and the Class Members with the required Notice and Acknowledgement of Pay Rate and Payday under NYLL § 195.1(a) within ten business days of their first employment date.

154.    Due to Johnson Controls' violations of Labor Law § 195.1, Plaintiffs and the Class Members are entitled to recover from it $100.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. New York. Lab. Law § 198(1)-b (2016).

FIFTH CAUSE OF ACTION:
BREACH OF THE PUBLIC WORKS CONTRACTS
(On Behalf of Plaintiffs and the Class Members against Johnson Controls)

155.    Plaintiffs realleges every preceding allegation as if set forth fully herein.

156.    Upon information and belief, the Public Works Contracts entered into by Johnson Controls, contained schedules of the prevailing rates of wages and supplemental benefits to be paid a requirement to Plaintiffs and the Class Members.

157.    Those prevailing rates of wages and supplemental benefits were made a part of the Public Works Contracts for the benefit of Plaintiffs and the Class Members.

158.    Johnson Controls breached the Public Works Contracts by willfully failing to pay and ensure payment to Plaintiffs and the Class Members the prevailing rates of wages and supplemental benefits for all labor performed upon the Public Works Projects.

159.    By reason of its breach of the Public Works Contracts, Johnson Controls is liable to Plaintiffs and the Class Members in the amount to be determined at the trial, plus interest, costs and attorneys' fees.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class Members, respectfully requests this Court grant the following relief:

a.    Certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class Members;

b.    Designating this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA opt-in collective action, apprising them of the pendency of this action,

permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members and tolling of the statute of limitations;

       c.      Impanels and charges a jury with respect to the causes of action;

       d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and Labor Law;

       e.      An injunction against Johnson Controls and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

       f.      An award for unpaid overtime premium pay under the FLSA and Labor Law;

       g.      An award for failing to provide the N.Y. LAB. LAW § 195.1 Notice;

       h.      An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

       i.      An award of prevailing wages under the Public Works Contracts;

       j.      An award of supplemental benefits under the Public Works Contracts;

       k.      An award of liquidated damages as a result of Johnson Controls' Labor Law violations;

       l.      An award of liquidated damages as a result of Johnson Controls' willful FLSA violations;

       m.      An award of pre-judgment and post-judgment interest;

       n.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

       a.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions of fact the

Complaint raises.

Dated: New York, New York
       April 4, 2023

                         LIPSKY LOWE LLP


                         <u>s/ Douglas B. Lipsky</u>
                         Douglas B. Lipsky
                         Milana Dostanitch
                         420 Lexington Avenue, Suite 1830
                         New York, New York 10170-1830
                         212.392.4772
                         doug@lipskylowe.com
                         milana@lipskylowe.com
                         *Attorneys for Plaintiff and*
                         *the Putative Class*