

Douglas B. Lipsky

420 Lexington Avenue, Suite 1830
New York, New York 10170
Main: 212.392.4772
Direct: 212.444.1024
doug@lipskylowe.com

www.lipskylowe.com

May 22, 2025

VIA ECF
The Honorable Jennifer L. Rochon, U.S.D.J.
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *Lubinski, et. al. v. Johnson Controls, Inc.*, 1:23-cv-02825 (JLR)

Dear Judge Rochon:

    We represent the six Named Plaintiffs in this case that asserts Fair Labor Standards Act ("FLSA"), New York Labor Law ("Labor Law") and breach of contract claims. We submit this letter seeking the Court's approval of the settlement agreement[1] ("Agreement") under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and *Wolinsky v. Scholastic Inc.*, No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918 (S.D.N.Y. July 5, 2012).

I.    <u>Summary of Plaintiffs' Claims and Damages</u>

    Johnson Controls is part of an Irish-domiciled multinational conglomerate headquartered in Cork, Ireland, which offers and produces the world's largest portfolio of building technology, software and services, including, in relevant part, HVAC, fire and security equipment and services for public and private, residential and commercial facilities and buildings. The conglomerate employed 102,000 people across 150 countries as of 2022.

    Plaintiffs worked for Johnson Controls as steamfitters and plumbers in its HVAC division. They performed work on private and public job sites throughout New York State, including New York City. During Plaintiffs' employment, Johnson Controls was under contract with various public entities. Plaintiffs were entitled to be paid prevailing wages and supplemental benefits for the work they performed pursuant to these contracts. But Plaintiffs allege Johnson Controls did not pay them at the correct rates, nor did it pay them for all hours worked, including when they were on call.

---

[1] Exhibit A.



A. <u>Plaintiff's Duties and Background</u>

Plaintiffs performed steamfitter and plumber work, such as maintaining and repairing boilers, maintaining and repairing chillers, and performing piping repairs on private and public job sites in New York City and various New York State Counties, including Bronx, Orange, Rockland, Sullivan, Ulster, Westchester, Putnam, and Dutchess. Plaintiffs worked out of Johnson Controls' Westchester County Office. Plaintiffs Lubinski, Kenny, and Morelli were part of Local 638. Plaintiffs Cornale, Dias, and Santiago were part of Local 21.

B. <u>Hours Worked</u>

Plaintiff Lubinski worked for Johnson Controls from July 16, 2013 through June 30, 2023. He worked five days per week, usually working Monday to Friday, generally from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, working 8 hours per day and 40 hours per week. During his employment, his schedule varied based on needs and emergencies and, as such, he often worked late, working between 2 to 15 hours per week beyond his scheduled shifts, resulting in him working an average of 48.5 hours per week. He worked overtime hours at least 2 weeks per month. During the weeks when Plaintiff Lubinski was on call, he worked between 4 to 47 hours beyond his normal schedule, bringing his total hours worked to an average of 65.5 per week. Plaintiff Lubinski worked and worked at least 8 to 10 on call weeks per year.

Plaintiff Kenny worked from March 2006 through June 30, 2023. Typically, Plaintiff Kenny worked 5 days per week, usually Monday to Friday, generally from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, working 8 hours per day and 40 hours per week. During his employment, Plaintiff Kenny regularly worked beyond his normal schedule due to service and emergency calls. As a result, he is often required to work late, working an average of 2 extra hours and a total of 42 hours per week. He worked overtime hours at least 2 weeks per month. Additionally, Plaintiff Kenny worked from 5:00 p.m. to 4:00 a.m. and from 5:00 p.m. to 5:30 a.m., working an extra 11-hour and 12-hour shift, respectively, on a scheduled job at Sloan Kettering Hospital in Westchester. During the weeks when Plaintiff Kenny was on call, he worked an average of 10 on call hours per week, bringing his hours worked to at least 65 per week. Plaintiff Kenny worked at least 5 on call weeks per year.

Plaintiff Cornale has worked from January 3, 2006 through June 30, 2023. Plaintiff Cornale worked 5 days per week, usually Monday to Friday, generally from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, for 8 hours per day and 40 hours per week. During his employment, his schedule varied and, as such, he worked between 2 to 15 hours per week beyond his scheduled shifts, resulting in him working at least 42 to 55 hours per week. He worked these overtime hours at least 2 weeks per month. During the weeks when he was on call, Plaintiff Cornale worked at least 4 to 40 on call hours, bringing his average total hours worked to 62. Plaintiff Cornale worked at least 8 to 10 on call weeks per year.

Plaintiff Santiago worked from 2015 through June 30, 2023. Plaintiff Santiago worked 5 days per week, usually Monday to Friday, generally from 7:00 a.m. to 3:30 p.m.,



with a 30-minute lunch break, working 8 hours per day and 40 hours per week. His schedule varied and, as a result, he worked beyond 40 hours per week at least 2 weeks per month. Plaintiff Santiago regularly worked late, working 1 to 2 extra hours per week, and sometimes picking up one or more 8-hour extra shifts per week, resulting in him working at least 42 to 60 hours per week. During his on call weeks, he worked at least 4 to 30 hours extra per week, bringing his total hours worked to an average of 57 per week. From 2017 to 2022, Plaintiff Santiago worked on average 6 on call weeks per year.

Plaintiff Dias worked from March 13, 2018 through June 30, 2023. From March 2018 to approximately the end of 2018, he worked as an apprentice and, from the end of 2018 to present, he worked as journeymen. Plaintiff Dias generally worked 5 days per week, usually Monday to Friday, generally from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, for 8 hours per day and 40 hours per week. During winter and summer months, his schedule varied and, as a result, he worked 5 to 10 hours per week beyond his scheduled shifts, resulting in him working at least 45 hours per week. Plaintiff Dias worked this way, approximately 8 weeks out of the year. He worked overtime hours at least 2 weeks per month. During the weeks when Plaintiff Dias was on call, he generally worked at least 5 to 20 hours extra per week, bringing his hours worked to an average of 52.5 hours per week. In 2021 or 2022, Plaintiff Dias worked 19 weeks on call. During the rest of his employment, he generally worked at least 8 to 10 weeks on call per year.

Plaintiff Morelli worked from March 25, 2013 to November 16, 2022. Plaintiff Morelli worked 5 days per week, usually Monday to Friday, generally from 7:00 a.m. to 3:30 p.m., with a 30-minute lunch break, working 8 hours per day and 40 hours per week. During his employment, from around May through September, Plaintiff Morelli often worked beyond his normal scheduled hours, due to incoming service and emergency repair calls, including for broken AC units. As a result, he regularly worked at least 6 extra hours and a total of 46 hours per week. He estimates that he worked overtime hours at least 2 weeks per month. During his on call weeks, he worked at least 12 to 45 hours extra per week, bringing his total hours worked to at least 52 per week. Plaintiff Morelli was on call at least 8 weeks per year.

C. <u>Unpaid Wages</u>

From the start of Plaintiffs' employment and until at least mid-2021, they were paid the same hourly rates when they worked on private jobs and on public job sites, failing to pay them all the prevailing wages and supplemental benefits that they were entitled to when they worked on public job sites. From 2017 and until at least mid-2021, despite working on multiple public job sites, Defendant never paid Plaintiffs all their applicable prevailing wages to which they were entitled. From 2017 and until at least mid-2021, Plaintiffs and other similarly situated employees who worked as Steamfitters and Plumbers never received the applicable rates of pay as was required by the prevailing wages schedules.

During all relevant times, Plaintiffs frequently worked more than 7 hours per day and more than 40 hours in a workweek, but Johnson Controls failed to pay them at the appropriate daily and weekly prevailing wage overtime rates. Johnson Controls failed to pay Plaintiffs 1.5 times their lawful regular rate of pay, for the hours worked above 7 per


day or 40 per week when they worked on a public job sites. Instead of paying Plaintiffs their overtime at prevailing wage rates, Johnson Controls paid them their overtime at 1.5 times their union rates of pay, which were significantly lower than what was required to be paid on the public work job sites. When Plaintiffs worked on public job sites, Johnson Controls failed to pay them all the applicable prevailing wage supplemental benefits, instead, upon information and belief, paying them only the lower union benefits rates.

Finally, Johnson Controls failed to provide Plaintiffs with accurate Notice and Acknowledgement of Payrate and Payday under Labor Law § 195.1 when they were hired or at any point in their employment, and failed to provide them with accurate wage statements under Labor Law § 195.3. By failing to provide Plaintiffs with these records, Johnson Controls willfully denied them the information needed to determine whether they were being paid in accordance with the applicable prevailing wage rates when working on public job sites, whether they were being paid overtime premium pay at the applicable prevailing wage rates, and whether they were being paid the supplemental benefits they were entitled to. Had Plaintiffs been provided with accurate records, they would have had enough information to determine that throughout their employment they were not being paid in accordance with the applicable prevailing wage rates when working on public job sites, they were not being paid overtime premium pay at the applicable prevailing wage rates, and they were not being paid the supplemental benefits they were entitled to.

D. Plaintiffs' Legal Claims and Johnson Controls' Defenses

Plaintiffs assert the following five claims against Johnson Controls: (i) failure to pay overtime premium pay under the FLSA; (ii) failure to pay overtime premiums under the Labor Law; (iii) failure to provide Plaintiffs with Labor Law § 195.3 wage statements; (iv) failure to provide Plaintiffs with Labor Law §195.1 wage notices; and (v) breach of public works contracts.

Johnson Controls adamantly denies any wrongdoing. Specifically, it denies it violated the FLSA or the Labor Law. In fact, it asserts it paid the Plaintiffs for all hours worked and at the proper rate.

E. Plaintiff's Damages

Counsel reviewed voluminous employment records for each Plaintiff and identified discrepancies that showed when Plaintiffs were not paid overtime and when they were not paid the applicable prevailing wage. Upon discovering that Johnson Controls began paying Plaintiffs the correct prevailing wage rates in 2022, after which Plaintiffs saw their gross wages increase by at least $20,000 per year, counsel initially estimated Plaintiffs were each owed $20,000 per year. This brought their total damages, conservatively, to $540,000, exclusive of the statutory damages for Plaintiffs' wage notice and wage statement claims, and attorneys' fees and costs. As explained below, after further discovery and settlement negotiations, counsel learned that Plaintiffs' total damages were, in fact, approximately $300,000.

II. Procedural and Settlement History

The parties engaged in a meaningful amount of formal discovery in multiple sets of interrogatories and requests for document production before a settlement in principle



was reached. Previously, the parties also participated in mediation, albeit unsuccessful at the time, with Judah D. Greenblatt, Esq., on December 4, 2023. Nevertheless, the parties continued to negotiate a settlement at arm's length themselves.

During these negotiations, the parties focused heavily on the applicable prevailing wage rates for each county and in what counties the Plaintiffs worked. With that in mind, Plaintiffs understood that their initial calculations overstated their damages by almost 50%. Once that understanding was reached, the parties agreed to settle this case, in part, to avoid the unnecessary time and expense of conducting depositions of parties and non-party witnesses. The extensive arm's-length negotiations were conducted between counsel who are well-versed in this legal area.

III.  The Settlement Agreement Should Be Approved As It is Fair and Reasonable Under the Circumstances and Complies with the Second Circuit's Decision in *Cheeks v. Freeport Pancake House, Inc.*

    A.  The Settlement Agreement is Fair and Reasonable.

A court should consider the totality of circumstances to determine whether the proposed settlement is fair and reasonable. This includes at least five factors: (1) the complexity, expense and likely duration of litigation; (2) the stage of the proceedings; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation. *Alvarez v. Sterling Portfolio Inv. L.P.*, No. 1:16-cv-5337 (CBA)(VMS), 2017 U.S. Dist. Lexis 206043, at *25 (E.D.N.Y. Dec. 13, 2017); *Wolinsky v. Scholastic Inc.*, No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918, at *4-5 (S.D.N.Y. July 5, 2012) (citing Medley v. Am. Cancer Soc., No. 1:10-cv-3214 (BSJ), 2010 U.S. Dist. LEXIS 75098, at *3 (S.D.N.Y. July 23, 2010)).

In making this determination, a court will approve a settlement even if it does not amount to a 100% recovery of all the damages sought. *Li v. Hly Chinese Cuisine Inc.*, 596 F. Supp. 3d 439, 448 (E.D.N.Y. 2022) (approving a settlement of approximately 13.8% of the total alleged damages even when defendant's finances were not in jeopardy); *Santos v. YMY Mgmt. Corp.*, No. 20-cv-1992 (JPC), 2021 U.S. Dist. LEXIS 23679, *1 (S.D.N.Y. Feb. 8, 2021) (approving a settlement of approximately 39% of the total alleged damages); *Zorn-Hill v. A2B Taxi LLC*, No. 19-cv-1058 (KMK), 2020 U.S. Dist. LEXIS 170608, *4-5 (S.D.N.Y. Sept. 17, 2020) (approving a settlement of 12.5% of the total alleged damages).

        1.  The settlement is reasonable and fair in view of the case's complexity, expense and the duration of the litigation.

While certain parts of this FLSA matter are not highly complex, serious factual questions exist that would require heavy litigation. The parties do not agree on the basic facts, including the hours Plaintiffs worked and the wages they should have been paid. While some discovery occurred, if this case were to proceed, the parties would need to



The Honorable Jennifer L. Rochon
May 22, 2025
Page 6 of 13

conduct much more discovery, including deposing at least seven party witnesses and multiple third-party witnesses. This litigation would be costly and time-consuming. As such, this factor favors approving the settlement. *See Marshall v. Deutsche Post DHL*, 1:13-cv-1471 (RJD) (JO), 2015 U.S. Dist. Lexis 125869, at *12 (E.D.N.Y. Sept. 21, 2015) (finding that costly litigation favors approving settlement).

       2.       The settlement is reasonable and fair considering the stage of the proceedings.

The parties participated in meaningful, formal discovery, including multiple sets of interrogatories and requests for documents, which allowed them to adequately evaluate the strengths and weaknesses of their respective claims and defenses. This favors approving the settlement. *See Alvarez*, 2017 U.S. Dist. Lexis 206043, at *8 (approving settlement where discovery was incomplete but the parties had sufficient information to analyze the case); *Hall v. Prosource Techs., LLC*, No. 1:14-cv-2502 (SIL), 2016 US. Dist. Lexis 53791, at *39 (E.D.N.Y. April 11, 2016) (approving settlement where informal discovery was exchanged sufficient enough the parties had "adequate knowledge of the strengths and weaknesses of their respective claims and defenses").

       3.       The settlement is reasonable and fair considering the risks of establishing liability and damages.

The biggest risk in Plaintiffs' case is establishing the hours they worked, what hours are compensable and what hourly rate should apply to each hour worked –hotly contested issues. Namely, Johnson Controls denies that Plaintiffs should be compensated for any on-call claim, and it asserts it paid them at the correct prevailing wage rate. But the settlement avoids this risk. It is accordingly uncertain whether, or how much, Plaintiffs would recover at trial. This factor, therefore, favors approval of the settlement. *See Marshall*, 2015 U.S. Dist. Lexis 125869, at *13 (explaining because the case was not a "slam dunk" these factors favor approval); *Bodon v. Domino's Pizza, LLC*, No. 1:09-cv-2941 (SLT), 2015 U.S. Dist. Lexis 17358 (E.D.N.Y. Jan. 16, 2015) ("[T]she question [in assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the uncertainties the class faces . . . .").

       4.       The settlement is reasonable and fair when considering Johnson Controls' financial condition.

Even when an employer's financial condition would not be jeopardized by a larger judgment at trial, *See Sanchez*, 2018 U.S. Dist. LEXIS 70647, *9 (approving settlement that provides for 20% of the claimed damages based on defendants' finances), a court will consider this factor to be neutral and still approve a settlement. *See, e.g., Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-cv-6242 (ENV)(MMH), 2025 U.S. Dist. LEXIS 61448, *30 (E.D.N.Y. Mar. 31, 2025) (quoting *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("when this factor is neutral [it] does not preclude the Court from approving the settlement").



5. The settlement is reasonable and fair considering Plaintiffs' best possible recovery and the litigation risks.

Plaintiffs calculate their total recovery, excluding interest, to be at least $300,000.00. To obtain this, Plaintiffs would have to prove the hours they worked, the applicable hourly rate for each of those hours, while disproving the hours that Johnson Controls claims they worked. A real likelihood exists that Plaintiffs could recover a fraction of the settlement amount in unpaid wages and statutory penalties. This favors approval. *See Alvarez*, 2017 U.S. Dist. Lexis 206043, at * 25. (approving an FLSA settlement where plaintiff's recovery range varied significantly on the success of certain defenses).

B. The Agreement Is the Product of Arm's-Length Settlement Negotiations.

The settlement was reached after the parties exchanged multiple sets of formal discovery demands and responses, participated in mediation, and continued to have comprehensive arm's length negotiations amongst counsel who are highly experienced and sophisticated in wage and hour litigation. These factors favor approval. *See Reyes v. 1944 First Ave. Deli Co., LLC*, No. 16-cv-8073 (KBF), 2017 U.S. Dist. LEXIS 189177, at *9 (S.D.N.Y. Nov. 14, 2017) (approving settlement that was reached following a settlement conference with Magistrate Judge Fox); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 1:09-cv-486 (ETB), 2012 U.S. Dist. Lexis 144446, at * 7-8 (E.D.N.Y. Oct. 4, 2012) (approving settlement that was reached following arm's-length negotiations and with a mediator's assistance).

C. The Agreement Complies with the Second Circuit's Decision in *Cheeks v. Freeport Pancake House*.

In August 2015, the Second Circuit resolved an arguably unsettled issue: parties cannot privately settle FLSA claims without either the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199, 206 (2d Cir. 2015). The Court also explained in *dicta* when an FLSA settlement is valid. Namely, it questioned the validity of agreements that contain confidentiality provisions, single-sided general releases and attorneys' fees that go beyond a certain percentage. *Id*. None of those issues are present in the Agreement.

1. The Agreement complies with *Cheeks* since it is publicly filed.

The Agreement does not contain a confidentiality provision and the parties acknowledge it will be publicly available and filed on the CM/ECF system. This concern thus does not exist, favoring approval.

2. The Agreement's release provision complies with *Cheeks.*

The Agreement's release is limited to the claims asserted. (Agreement ¶ 2). This favors approval. *Gomez v. 2343 Jerome Food Corp.*, 2021 U.S. Dist. LEXIS 249887, *2 (S.D.N.Y. Dec. 28, 2021) (approving a settlement with a release provision limited to the claims asserted in the case); *Cortes v. New Creators, Inc.*, 2016 U.S. Dist. LEXIS 79757, *13 (S.D.N.Y. June 20, 2016) (same).



   3. <u>The Agreement complies with *Cheeks* since no non-disparagement clause exists.</u>

 The Agreement here does not contain a non-disparagement clause. This concern thus does not exist, favoring approval.

IV. <u>The Court Should Approve Plaintiffs' Counsel's Fees and Expenses, As the Amounts Are Reasonable</u>

  A. <u>Counsel's Fees of One-Third of The Settlement Is Reasonable and Regularly Approved.</u>

 Plaintiffs' Counsel shall receive under the Agreement, subject to the Court's approval, $75,260.51: $74,858.51 in fees (i.e., one-third of the $224,598.00 settlement, net of the $402.00 in expenses). This amount is reasonable as contingency fees of one-third in the FLSA context are routinely approved. *See e.g., Emiliano Nieto Zepeda v. Baggio, Ltd.*, No. 1:17-cv-2290 (VB), 2017 U.S. Dist. LEXIS 143332, at *2 (S.D.N.Y. Sept. 1, 2017) (approving one-third request fee request); *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) ("[A] fee that is one-third of the fund is typical" in FLSA cases). And it remains reasonable for counsel to receive one-third of the fund even when the plaintiff is not receiving 100% of her claimed damages. *See Emiliano Nieto Zepeda*, 2017 U.S. Dist. LEXIS 143332, at *2 (approving one-third request when plaintiff is receiving 50% of her claimed damages). And it remains reasonable for counsel to receive one-third of the fund even when the plaintiffs are not receiving 100% of their claimed damages. *See Emiliano Nieto Zepeda*, 2017 U.S. Dist. LEXIS 143332, at *2 (approving one-third request when plaintiff is receiving 50% of her claimed damages).

 Also, this firm assumed a meaningful financial risk when agreeing to represent Plaintiffs under this contingency fee arrangement. We took on the case with no guarantee if and when there would be a resolution, while investing our time and effort and advancing costs – all with no guarantee of any compensation. Indeed, in unsuccessful cases, this firm does not recover anything despite investing hundreds of hours and thousands in expenses. This assumption of risk is unique to the plaintiffs' bar and further favors approving the near-one-third contingency fee. *See Garcia*, 2012 U.S. Dist. Lexis 144446, at *20; *Campos v. Goode*, No. 1:10-cv-224 (DF), 2011 U.S. Dist. Lexis 22959, at *19 (S.D.N.Y. March 4, 2011).

  B. <u>Counsel's Fee Request Is Further Reasonable Considering Their Hourly Rates and Hours Expended.</u>

 Lipsky Lowe has expended more than 191.99 hours, equaling $71,138.35 in fees: 41.20 hours for Douglas Lipsky (partner) at $500 per hour, totaling $20,600.00; and 90.8 hours for Milana Dostanitch (Senior Of Counsel) at $400 per hour, totaling $36,320.00; 25.70 hours for Frank Tantone (Associate) at $300 per hour, totaling $7,710.00;19.00 hours for Olivia Cassandro (admission pending) at $250 per hour, totaling $4,750.00; 13.79 hours for LiAnne Chan (Paralegal) at $115 per hour, totaling $1,585.85; 1.5 hours for Jasmine



The Honorable Jennifer L. Rochon
May 22, 2025
Page 9 of 13

Hernandez (Paralegal) at $115 per hour, totaling $172.50.[2] These hours and rates are reasonable.

1. Counsel's fee request is reasonable considering the requested hourly rates, their experience and previously approved rates.

A reasonable hourly rate is one which a "paying client would be willing to pay." *Arbor Hill Concerned Citizens of Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2007). To find a reasonable hourly rate, the Court must determine whether the requested rates are "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006).

Plaintiff requests a rate of $500 for partner Douglas B. Lipsky, which is reasonable considering his background: he has practiced employment law for more than 20 years; he is a member of the New York State Bar Association, Wage and Hour Committee; he has presented on numerous issues, including presenting to the New York State Academy of Trial Lawyers on employment law and the FLSA; he was a contributing authority on a treatise on wage and hour litigation, Wage & Hour Collective and Class Litigation, ALM Law Journal Press (2012); prior to founding Lipsky Lowe, he was a Senior Associate at Seyfarth Shaw LLP in its employment practice group, which is consistently ranked as one of the top employment practice groups in the Country. Courts, recognizing this background, have previously approved this and comparable rates[3]. *See Danowski v. Stardust Diners, Inc. et al*, 2:23-cv-1826 (E.D.N.Y. Dec. 1, 2024 (approving Lipsky at $500); *Fernandez v. Casa Restaurant & Lounge, Inc. et al.*, 1:23-cv-10249 (GWG) (S.D.N.Y. Sept. 12, 2024) (approving Lipsky at $475); *Enriquez et al v. 189 Chrystie Street Partners, LP et al*, 21-11195 (S.D.N.Y. May 12, 2023) (approving Lipsky's $475 rate); *Ilyina v. Fantasy Lake Resort Inc., et al.*, 1:19-cv-4845 (JRC) (E.D.N.Y. May 4, 2023) (approving $450); *Diaz v Rockland Gardens Associates*, 7:22-cv-3281 (SDNY February 3, 2023) (approving $450).

Furthermore, Courts in this District have approved the rate requested here for attorneys of similar experience in FLSA matters. *See e.g., Sajvin v. Singh Farm Corp.,* No. 17-CV-04032, 2018 U.S. Dist. LEXIS 137485, at *25 (E.D.N.Y. Aug. 13, 2018) (approving $500 hourly rate for partner in FLSA Case); *Keawsri v. Ramen-Ya Inc.*, No. 17-cv-2406 (LJL), 2022 U.S. Dist. LEXIS 140803, at *10 (S.D.N.Y. Aug. 8, 2022) (approving $450 hourly rate for attorney with 10 years of experience); *Torres v. Gristede's Operating Corp.*, 04 Civ. 3316 (PAC), 2012 U.S. Dist. LEXIS 127890, at *14 (S.D.N.Y. Aug. 6, 2012) (approving $450).

Plaintiffs request an hourly rate of $400 for Milana Dostanitch, which is reasonable considering her background: she is a eleventh-year attorney who graduated in 2014 from Fordham University School of Law and has practiced exclusively in employment law since

---

[2] Contemporaneous time records provided as Exhibit B.
[3] Firm biography provided as Exhibit E.



graduating; she is an Adjunct Professor at Fordham University School of Law, where she teaches trial preparation and courtroom presentation; and she is a Committee Member of the Labor and Employment Law Committee. She has been previously approved at this rate. *Flores v. El Bukanitas Inc.*, 22-6751 (E.D.N.Y. Feb. 14, 2024). And this rate is consistent with what other attorneys at her level have been approved at. *See Mercado v. Metro. Transp. Auth.*, 2023 U.S. Dist. LEXIS 84303, at *9 (S.D.N.Y. May 15, 2023) (approving hourly rate of $400 for two associates with 4 and five years of experience); *Hernandez v. El Azteca Y El Guanaco Rest Corp.*, 2021 U.S. Dist. LEXIS 236056, *6 (S.D.N.Y. Dec. 9, 2021) (finding that the associate's hourly rate of $400 was reasonable); *Quic v. Uncle Mario's Brick Over Pizza LLC*, No. 20-cv-8712 (RA), 2021 U.S. Dist. LEXIS 194502, *2 (S.D.N.Y. Oct. 7, 2021) (same).

The requested rates for Mr. Lipsky and Ms. Dostantich are reasonable considering they were approved at these rates in the Eastern District of New York. *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 2019 U.S. Dist. LEXIS 102840, at *17 (E.D.N.Y. June 18, 2019) (explaining, when comparing rates between the Southern and Eastern District, a "somewhat lower rate structure is more commonly applied in the Eastern District.").

Plaintiffs request an hourly rate of $300 for Frank Tantone, which is reasonable considering his background: he graduated in 2016 from St. John's University School of Law and has practiced almost exclusively in employment law since 2020. Courts, faced with attorneys with similar experience, have approved this rate. *See Hall v. Prosource Tech.*, LLC, No. 14-CV-2502 (SIL), 2016 US Dist. LEXIS 53791 at *39 (E.D.N.Y. Apr. 11, 2016) (approving $300 hourly rate for fifth-year associate). Like Mr. Lipsky, when he represents individuals who pay an hourly rate, Mr. Tantone charges them rates that exceed the requested rate. Thus, the requested fee award is reasonable.

Plaintiffs request an hourly rate of $250 for Olivia Cassandro, which is reasonable considering her background: she graduated from Brooklyn Law School in May 2024. During law school, she participated in the Federal Civil Litigation Clinic at the U.S. Attorney's Office in the Eastern District of New York. She also volunteered for the City Bar Justice Center's Federal Pro Se Legal Assistance Project in EDNY and served as a judicial intern in the Southern District of New York. Her application for admission to practice law in the Second Department is pending. Courts, faced with *attorneys* with significant experience have approved slightly higher rates, while approving lower rates for paralegals and staff. *See Lazaro v. Best Fish Mkt. Corp.*, 2022 U.S. Dist. LEXIS 17015, *5 (E.D.N.Y. Jan. 29, 2022) (noting that a paralegal rate of $125 was "within the parameters in this district"); *Hall v. Prosource Tech.*, LLC, No. 14-CV-2502 (SIL), 2016 US Dist. LEXIS 53791 at *39 (E.D.N.Y. Apr. 11, 2016) (approving $300 hourly rate for fifth-year associate). Thus, the requested fee award is reasonable.

Counsel requests $115 their paralegals. Ms. LiAnne Chan has more than 10 years of experience as a paralegal, including working as a paralegal at Outten & Golden, a



prominent plaintiffs' side employment firm. Ms. Jasmine Hernandez has more than 5 years of experience as a paralegal. She graduated with a Bachelor of Science degree in Anthropology and Political Science from the City University of New York, Hunter College, in 2018.The requested rate is consistent with what others have been approved at. *See Lazaro*, 2022 U.S. Dist. LEXIS 17015, at *5 (noting that a paralegal rate of $125 was "within the parameters in this district"); *Ilyina v. Fantasy Lake Resort Inc., et al.*, 1:19-cv-4845 (JRC) (E.D.N.Y. May 4, 2023) (approving Ms. Chan's $110 hourly rate in an FLSA matter).

> 2. Counsel's fee request is further reasonable considering they regularly represent clients who pay them rates that are greater than the requested rates.

Enclosed are redacted copies of previous engagement letters. As these letters confirm, counsel often represents individuals and businesses who pay them hourly rates that exceed the requested rates: clients regularly agree to pay Mr. Lipsky $600 or more per hour, and agree to pay Ms. Dostanitch and Mr. Tantone $400 per hour or more per hour.

This further underscores the reasonableness of the requested rate, as it reflects the market rate for an attorney of their experience. *See Anthony v. Franklin First Fin., Ltd.*, No. 09-cv005578 (BSJ)(RLE), 2012 U.S. Dist. LEXIS 21730, at *8 (S.D.N.Y. Feb. 16, 2012) (involving the court "giving significant weight" to redacted engagement letters to approve the requested hourly rates); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (explaining "the range of rates that plaintiff's counsel actually charge their clients . . . is obviously strong evidence of what the market will bear").[4]

> 3. Counsel's fee request is further reasonable considering hourly rates are not stagnant.

These rates are further reasonable when considering hourly rates are not stagnant. *Reiter v. MTA N.Y. City Transit Auth.* 457 F.3d 224, 232 (2d Cir 2006) ("[In fee applications], rates used by the court should be current rather than historic."). Rates generally increase each year, resulting in the market rate in 2025 being greater than it was in 2014. The average attorney hourly rates in New York, for example, increased by 3% in 2023 and by 4.8% for AMLaw 100 firms.[6] It accordingly follows that the hourly rates that were approved in earlier years do not reflect what those rates would be in today's market for someone with the same experience. Putting this in context and using the 3% increase rate, the $400 hourly rate that was recognized as reasonable in 2010 for a partner in *Luca v. Cty. of Nassau*, 698 F. Supp. 2d 296, 302 (E.D.N.Y. 2010) would be $568 in today's market.[7]

Rates also adjust with inflation. For example, that $400 hourly rate in *Luca*, equals $566.25 when adjusted for inflation.[8]

---

[4] Redacted Engagement Letters, Exhibit C.



    4.    Counsel's fees are further reasonable considering the work done on this case.

Since the lawsuit was filed on April 4, 2023, the parties engaged in meaningful litigation, including significant discovery, mediation and continued settlement talks.

    5.    Counsel's fees are further reasonable considering the division of labor between Partner and Associate

The work here was appropriately allocated between a partner and associates. Ms. Dostanich and Mr. Tantone, both associates of Lipsky Lowe LLP, and Olivia Cassandro, whose admission to practice law is pending, performed the majority of the work on this matter, billing about 80% of the hours on this case altogether. This case is therefore not the situation where a partner is doing all of the work and seeking to be compensated for associate-level work. This firm was, rather, able to allocate the most cost efficient resources to this case, while effectively representing each Plaintiff.

    6.    Counsel's fees are further reasonable considering the modest lodestar multiplier.

Counsel's lodestar is $71,138.35. With Counsel requesting $74,858.51 in fees, Counsel is requesting a multiplier of 1.05 ($74,858.51/$71,138.35). This multiplier should be approved as it is below what Courts within this District have approved. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (collecting cases showing courts awarding lodestar multipliers between two and eight); *Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-cv-6242 (ENV)(MMH), 2025 U.S. Dist. LEXIS 61448, *43 (E.D.N.Y. Mar. 31, 2025) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.").

    C.    Lipsky Lowe Is Entitled to Its Expenses

Lipsky Lowe is entitled to recover its costs in additional to their reasonable fees. See 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663. These include reimbursement for, by way of example, filing fees, process servers, copying and postage. *See Marquez v. Erenler, Inc.*, No. 12-cv-8580 (GHW), 2014 U.S. Dist. LEXIS 159128, at *9 (S.D.N.Y. Nov. 10, 2014) (awarding filing and transcript fees, and process server expenses); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (awarding expenses including filing fees and postage).

Here, Counsel is seeking $402.00 in expenses for the filing fee.[5] As this is the only expense, it should be reimbursed.

---

[5] Exhibit D.



V.    <u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Agreement and award the requested attorneys' fees and expenses.

    Respectfully submitted,
    LIPSKY LOWE LLP

    <u>s/ Douglas B. Lipsky</u>
    Douglas B. Lipsky

CC:    All Counsel of Record (Via ECF)